STATE v. BRIGGS.

(Filed May 20, 1902.)

LICENSES—*Merchants' Licenses—Acts 1901, Chap. 9, Secs. 77, 101, 103.*

Acts 1901, Chap. 9, Secs. 101, 103, creates two offenses, one for the failure to take out a merchants' license, 'and one for failure to pay license tax on demand by the sheriff, and such demand is not necessary to a conviction for the first offense.

DOUGLAS, J., dissenting.

INDICTMENT against J. E. Briggs and A. Savery, heard by Judge *A. L. Coble* and a jury, at February Term, 1902, of the Superior Court of FORSYTH County. From the finding of a special verdict and a judgment of guilty thereon, the State appealed.

*Robert D. Gilmer,* Attorney-General, for the State.
No counsel for the defendant.

MONTGOMERY, J. The defendant was indicted for unlawfully engaging in the business of merchandise without having procured a license to engage in the business. The jury returned a special verdict to the effect that the defendant, from May 1, 1901, till the finding of the bill of indictment at February Term, 1902, and at the time of the trial, was a merchant, and had not taken out the license as required in Section 103 of the Revenue Act of 1901, till after the finding of the bill of indictment; that the license was not countersigned by the Register of Deeds, as is required by Section 94 of the same act, till after the February Term, 1902, when the bill was found; that the County Commissioners levied no tax under Schedules B and C till the first Monday in September, 1901; that no demand was made on the defendant for the tax as required in Section 100 of the same act, and that the de-

fendant had no knowledge of the law requiring him to pay a special tax. On the special verdict, the Court having been of the opinion that the defendant was not guilty, so held him not guilty, and the Solicitor for the State made exceptions and appealed to this Court.

An annual license tax of one dollar is fixed as the merchants' tax by Section 77 of the Revenue Act of 1901, and by Section 103 of the same act, the failure of every person, who shall practice any trade or profession, or use any franchise taxed by the laws of North Carolina without having paid the tax and obtained a license, renders such person guilty of a misdemeanor. By the same section, also, such persons subject themselves to a penalty of $50 for not paying the tax and taking out the license, in addition to the pains and penalties denounced against persons who exercise these trades or professions upon which the law imposes the payment of a tax and the procuring of a license to engage in such business.

There is another offense against the criminal law, connected with the same subject-matter, mentioned in Section 101 of the same act, and that offense is the refusal of such person to pay the tax when the same shall be demanded by the Sheriff of him. That offense is constituted by a failure on the part of those engaged in trades and professions who have either taken out a license and who did not pay the tax at the time, or who have failed to take out license and who have done business notwithstanding. The language of Section 101 on that point is "that it shall be and is hereby made the duty of the Sheriff of each county in the State to make diligent inquiry as to whether or not all license taxes provided for under Schedules B and C of this act shall have been paid, and any person, firm or corporation liable for such license tax, who fails or refuses to pay such tax when demanded by the Sheriff, shall be guilty of a misdemeanor," etc.

Separate offenses are clearly created by Sections 101 and 103. The first, as we have seen, is the doing business without having paid the tax and procured the license, and the last is the refusal to pay the tax when the Sheriff demands it. A particular reading of Section 101 will make it clear that the Sheriff is not authorized to proceed, as for a criminal offense against an offending trader for the failure to take out the license, but only for a failure or refusal on his part to pay the tax after demand made by the Sheriff for it.

The reasons for this legislation we need not inquire into. We find the law clearly written, and we only have to interpret it.

His Honor took the view that the two sections, 101 and 103, constituted one offence, and we think it was an erroneous view of the law.

Reversed.

DOUGLAS, J., dissenting. I can not concur in the opinion of the Court as it seems to be required neither by the wording of the statute nor the policy of the law. I deeply regret the apparent tendency to depart from the strict construction of penal statutes, of immemorial obligation, and to give to them a *liberal* or so-called *beneficial* interpretation. The effect of such "beneficial interpretation" is to *create* criminals by judicial construction. Such a course can never meet my approval.

Let us lay aside for the moment the technicalities of law and take a common sense view of the facts of the case before us. The defendant is indicted for failing to pay the sum of one dollar which he had not the slightest idea he was owing. He is probably but one among a thousand country merchants who are in the same situation. They are perfectly willing to pay their taxes, and probably have done so, as there is no allegation that he owes any tax whatsoever except the one

dollar license fee. And yet these men, willing to perform every duty and to pay every debt, are liable to be sentenced to imprisonment in the common jail at the discretion of the Court below. They are not given an opportunity to pay the tax. But it seems this is not enough. After serving one term in jail, they are not yet safe. The vengeance of the law is not yet satisfied, for their failure to pay that dollar. The Sheriff, who in the meantime has collected by execution the penalty of fifty dollars, imposed by Section 103, may, for the first time, demand that dollar, and a failure to pay on demand may be followed by another long term of imprisonment.

Can we suppose that the law contemplated any such consequences? Surely not. It is a well-settled principle of interpretation that where one matter is specifically provided for in one part of a statute, it is *pro tanto* taken out of the general operation of the statute. It seems clear from the face of the statute that Section 101 was intended to cover a failure to pay such unusual and additional taxes as are not supposed to be within the knowledge of the average citizen. I know, of course, that everyone is presumed to know the law, but we all know that this is a mere naked presumption of the most violent nature, usually without any foundation in reality. Taking this fact into consideration, Section 101, provides that such a taxpayer shall not be liable to prosecution until after demand by the Sheriff, and a subsequent failure or refusal to pay. This section further provides that, even after the delinquent is arrested and carried before a committing Magistrate, he may avoid all further penalty by paying the original license fee with all costs and expenses due to the Sheriff.

If Section 103 is held to apply to the case at bar, the wise and beneficent provisions of Section 101 are practically eliminated from the statute, and the jail doors are open to per-

haps a thousand honest men who are entirely innocent of the slightest wrongful intent.

As I have said before, I am in favor of punishing criminals, but not of making criminals.

We should not forget that it has been found as a fact that "the defendant had no knowledge of the law requiring him to pay the special tax." I can not concur in the opinion of the Court, as I think that the wise judgment of the able Judge below should be affirmed.